## LANIER, executor, v. HUGULEY.

1. The instruction on the burden of proof, as applied to the facts of this case, was correct.
2. An executor who has notice of a debt outstanding against the testator, and who resists payment on the ground that the debt was discharged by the testator in his lifetime, cannot justify himself for the non-production of assets with which to pay it, by setting up that he retained in his hands an ample amount of stock in a private corporation, and that, pending litigation which he inaugurated and carried on in resistance to the creditor's suit, the stock became depreciated in value so as to be insufficient to satisfy the creditor. This is true notwithstanding the will disposed of the whole estate, including the stock, by directing the executor to deliver the same to the legatees in kind.
3. In a suit by a widow against the executor of her husband on an ante-nuptial contract, neither the will of the husband nor any expressions of the testator contained therein can be used by the executor as evidence that the ante-nuptial contract was discharged by the testator in his lifetime.
4. There was no error in refusing to grant a new trial on any of the grounds stated in the motion.

*July 24, 1893.*

Before Judge HARRIS. Troup superior court. November term, 1892.

The contract sued on is set forth in a former report of this case in 86 *Ga.* 636. At the second trial there was a verdict for $4,000 and interest in the plaintiff's favor, and the defendant's motion for a new trial was overruled. The motion contains the general grounds, and two assignments of error which are fully shown in the first and second parts of the opinion. The other grounds are :

That the court refused a request to charge the jury thus : " If the executor, Lanier, received the assets of George Huguley's estate in bonds, stocks and such securities, as George Huguley held them at his death, and did not otherwise invest them because he *bona fide* felt satisfied such securities were solvent and good, and retained enough to pay debts and claims of which he had

notice, and the stock so retained was lost by failure and depreciation without fault of the executor, then he is not liable further than the assets now in hand, if you should find in favor of defendant on the plea of *plene administravit præter.*"

Error in charging : "It is in evidence submitted to you that Mr. Huguley had given plaintiff certain notes during his life and a deed to a house. This was offered solely and alone for the purpose of illustrating, so far as it may, as to whether the contract sued upon had been paid off. It would not have been admitted for any other purpose. It is to be used by you for no other purpose than to determine the question as to whether or not Mr. Huguley paid off this obligation in his lifetime. It cannot be used to sustain the idea that, in your opinion, she had enough; that has nothing to do with this case. A man may give his wife as much as he pleases, if he desires to do so, and that would be no reason why he should not pay her a debt, if he owes her."

Because the court refused to admit the will in evidence for all general purposes and on all the issues in the case, but limited it and its consideration and bearing simply to the issue of the plea of *plene administravit.* This will was made in February, 1886. It was therein stated that testator had provided for his wife, and otherwise she was not to participate in the division of any property mentioned in the will; and that nothing theretofore given to any of his children or their descendants should be counted against them as advancements. He then devised to his children, grandchildren and great-grandchildren sundry amounts of factory stock, railroad stock, insurance money, etc.; and directed that his executors, as soon after his death as convenient, divide out the bonds and stocks and transfer and deliver them to the legatees named to receive them, and settle up the estate without making returns or probating the will or

expense to the parties, except as might be necessary to collect insurance.

P. H. BREWSTER, T. H. WHITAKER and R. A. S. FREEMAN, for plaintiff in error.

F. M. LONGLEY and N. J. & T. A. HAMMOND, contra.

SIMMONS, Justice.

1. George Huguley, in consideration of a marriage about to be solemnized between himself and Sallie White, made a contract with her wherein he agreed and directed that his executors should, of the first money coming into their hands of his estate and as soon as it should come into their hands, after paying his debts, expenses of last sickness and funeral expenses, pay over to his then widow $4,000. After his death the widow sued Lanier, the executor, upon this contract, and one of the pleas filed was that of payment. Upon this branch of the case the court charged the jury that the burden being upon the defendant to prove the truth of the plea of payment, it must be shown by a preponderance of the evidence or the plea would fail. This charge is alleged to be error.

The plea of payment is an affirmative defence; and the code (§3758) declares that "the burden of proof generally lies upon the party asserting or affirming a fact, and to the existence of whose case or defence the proof of such fact is essential." The plaintiff tendered in evidence a valid subsisting contract calling for the payment of $4,000 by the executor. If payment had been made, as alleged in the defendant's plea, the burden was upon him to establish the fact to the satisfaction of the jury by a preponderance of evidence. The party upon whom the law casts the burden of proof cannot make out his case or defence by evidence which simply raises a doubt as to the matter in issue or leaves the proof equally balanced in the minds of the jury. See *Tippin v. Brockwell*, 89 *Ga.* 467.

2. The executor also filed the plea of *plene adminis-travit*, alleging therein, in substance, that at the time notice of the plaintiff's demand was served upon him, he had in his hands assets of sufficient amount and value to pay all the claims against the estate; that he held certain factory stock worth $11,200, and other assets; that this stock had without fault on his part and unexpectedly, and by reason of the financial failure of the factory, become worthless; and that other debts of higher dignity would consume the other assets of the estate. The court was requested to charge that if the allegations of this plea were established, the executor would not be liable. · The request was refused and the court charged the contrary. The evidence in the record discloses that the executor took possession of a large amount of stocks and bonds at the death of the testator; that in accordance with the will he distributed these stocks and bonds in kind to the legatees; that before this was done he had notice of the widow's claim and reserved 112 shares of factory stock to pay it in case the defence thereto was not successful; and that pending the litigation over this claim the stock became worthless, by reason of the failure of the manufacturing company. It was the duty of the executor to administer this estate, and for this purpose the law allowed him twelve months. It was his duty to convert the assets into cash, especially the surplus which he reserved after paying the bequests in kind as directed by the will. According to the allegations of the plea, the stock which he reserved to pay this debt in case his defence should not prevail, was worth nearly twelve thousand dollars. He should have converted enough of this into cash to pay the debt. The ante-nuptial contract of which he had notice was not payable in stock but in cash, and he should have turned the stock into cash in. order to make the payment when required of him. If by reason of his failure

to do this he was unable to make the payment, the stock having become worthless while in his hands, the loss should not fall upon an innocent creditor, especially where nearly $100,000.00 in value was paid to the legatees while the litigation over this claim was pending. When an executor or administrator pays out money to heirs or legatees or turns over assets to them after he has notice of a claim against the estate, he does so at his own risk; and this is so although the will may direct the executor to turn over the assets in kind to the legatees. In the case of *McIntosh* v. *Hambleton*, 35 *Ga.* 94, this court held: "Though an administrator is not liable for property lost or destroyed without fault on his part, he is bound to administer the estate according to law, by paying the debts before making distribution to legatees or heirs. This duty is enjoined upon him by law, by his oath of office and by a sound public policy. An administrator who, with notice of an outstanding debt, paid to the heir, before the expiration of twelve months from the grant of administration, a portion of the estate, retaining, in slaves and other property, enough to meet said debt, is not protected against the creditor's claim by the results of the late war in the way of the abolition of slavery and the serious depreciation of the other assets retained. The administrator, in such case, must make good the deficiency caused by his own illegal act." See also *Sharp* v. *Bonner*, 36 *Ga.* 421.

3, 4. As to the exclusion of the will as evidence that the contract was discharged in the lifetime of the testator, it is unnecessary to add anything to what is said in the 3d head-note to this opinion. There was no error in refusing a new trial on other grounds of the motion.

*Judgment affirmed.*